Theodore Koppelman v. Commissioner.
Koppelman v. Commissioner
Docket No. 23872.
United States Tax Court
1951 Tax Ct. Memo LEXIS 13; 10 T.C.M. (CCH) 1208; T.C.M. (RIA) 51361; December 21, 1951
*13 Petitioner was managing partner and owner of a fifty per cent interest in a partnership with three other individuals. He conveyed to himself and his wife, as trustees, a portion of his interest. His wife and two daughters were the beneficiaries. Two of his partners created similar trusts. A new partnership agreement was executed by the four individuals and trustees of the three trusts in which the trusts were named as partners. Held: the trust created by petitioner was not a partner for federal income tax purposes and respondent did not err in determining that petitioner is taxable on fifty per cent of the distributive partnership income. Monte Appel, Esq., for the petitioner. William H. Best, Jr., Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: Respondent determined deficiencies in income tax against petitioner in the amount of $119,853.53 for 1944; $136,920.12 for 1945; and $109,163.93 for 1946. The sole issue is whether a trust created by petitioner in 1942 was, for income tax purposes, a bona fide member of a partnership of which petitioner was a member. Petitioner filed income tax returns for the calendar years *14 1944, 1945 and 1946 with the collector of internal revenue at Scranton, Pennsylvania. Findings of Fact Petitioner was born in Russia in 1897, emigrated to the United States about 1910 and became a citizen in 1916. In 1919 he started a pants manufacturing business at Scranton with a capital investment of $2,500. In 1922 he married Flora, his present wife. In 1923 he formed a partnership with Harry Dickstein, Samuel Dickstein and Joseph M. Harris to manufacture trousers and pants under the firm name of Lackawanna Pants Manufacturing Company, petitioner having a one-third interest. In January 1927 he paid a sum to his partners to increase his interest to one half. His half interest then represented an investment of $17,101.09. To enable petitioner to buy the additional interest Flora Koppelman borrowed $5,000 from her sister, which loan was later repaid with interest. Petitioner and his partners entered into a written partnership agreement under date of January 3, 1927, which provided that petitioner was to be active manager of the business and to devote all his time and attention to it and was to receive a salary of $75 per week in addition to his interest. All buying of merchandise *15 was to be under the supervision of petitioner and Samuel Dickstein, all credits were to be agreed upon by petitioner and one of the other partners, all checks drawn and any notes given by the partnership were to be signed by petitioner and one of the other partners. It was agreed that no partner could sell or transfer his interest in the business without consent of the other partners. The partnership was operated under this agreement until 1943. The Dicksteins and Harris operated a separate business of manufacturing pants and overalls under the name of Anthracite Pants Manufacturing Company. Flora Koppleman was born in Russia in 1895, came to the United States about 1899 and was employed in the clothing industry from about 1910 until her marriage. After her marriage she worked in the factory of the Lackawanna Pants Manufacturing Company and became production manager. At first she had some fifty or sixty girls under her supervision, the number increasing in later years to about six hundred. She worked for many years without compensation except bonuses of some $250 or $500 given annually and one bonus of $5,000 given in 1944. Petitioner and his wife had two children, Rita, born in *16 1924, and Leonore Betty, born in 1931. These children did not render any services of value to the partnership doing business as Lackawanna Pants Manufacturing Company in 1944, 1945, or 1946. Both children attended the public schools of Scranton, and Rita attended William and Mary College, graduating from college in 1946. Rita was married in 1947. On February 2, 1942, petitioner executed a trust indenture to himself and Flora Koppelman as trustees, naming Flora, Rita and Leonore Betty as beneficiaries. The indenture provided, in pertinent part: "THAT WHEREAS, the GRANTOR has set up, and by this instrument desires formally to set up three Trust Funds, the income of one of such funds to be available to his wife, and one for each child so that each of them will have and enjoy the same in Grantor's life time in addition to the usual maintenance and support of his family and the education of his children, which Grantor has provided and intends to continue to provide and notwithstanding the fact that Grantor does not intend, by the creation of these Trust Funds, in any way to relieve himself of his obligation to continue so to do, and "WHEREAS, the Grantor has obtained the consent of *17 his partners to turn over to Grantor's wife and Grantor, as Trustees, a share equal in value to One Hundred Thousand ($100,000.00) Dollars out of Grantor's interest in the partnership known as LACKAWANNA PANTS MFG. CO., which interest of the Grantor consists of Fifty (50%) percent of the entire capital of the said partnership, and which $100,000.00 shall be divided by the TRUSTEES into three equal shares so that one-third thereof will constitute a Trust Estate for FLORA KOPPELMAN, one-third thereof will constitute a Trust Estate for LEONORE BETTY KOPPELMAN, and one-third thereof will constitute a Trust Estate for RITA KOPPELMAN. "NOW, THEREFORE, in consideration of the sum of One ($1.00) Dollar and other good and valuable considerations to Grantor in hand paid, the receipt whereof is hereby acknowledged and in consideration of the love and affection which Grantor bears his family, Grantor has transferred, assigned, conveyed and set over, and by these presents does hereby transfer, assign, convey and set over unto his wife, FLORA KOPPELMAN, and himself, as Trustees, the following property, to wit: "Three (3) equal shares amounting in the aggregate to One Hundred Thousand ($100,000.00) *18 Dollars out of the capital investment of Grantor in the partnership known as LACKAWANNA PANTS MFG. CO. located in Scranton, Pennsylvania, as such capital appears on the books of the said partnership as of the 1st day of February, 1942, which sum shall be divided into three equal Trust Estates for the wife and two children of Grantor. "Each Trust Estate shall be subject however to an indebtedness of one-third of Twenty-two Thousand ($22,000.00) Dollars due from Grantor to Samuel Dickstein, Harry Dickstein and Joseph H. Harris (the partners of the Grantor) and subject also to an indebtedness of one-third of Ten Thousand ($10,000.00) Dollars due from Grantor to Archer & Co. of Boston, Massachusetts, which total indebtedness of Thirty-two Thousand ($32,000.00) Dollars is to be paid by the Trustees out of the first monies which they may have available, so that the net value of the three Trust Estates as of the date hereof is Sixty-eight Thousand ($68,000.00) Dollars. "TO HAVE AND TO HOLD the same unto them, the said Trustees, and their successors, IN TRUST NEVERTHELESS, to hold, manage, invest and reinvest the same and receive the income and profits therefrom, and after deducting all *19 proper expenses incidental to the management of the Trusts, to pay or apply the net income or profits thereof, and to distribute the corpus of the Trust Estates to the persons and in the manner hereinafter set forth. * * *
"3. It is expressly understood and agreed that nothing in this Trust Indenture contained nor the creation of these Trusts is intended to modify or change or limit any of the provisions of the LACKAWANNA PANTS MFG. CO. partnership agreement, the Life Insurance Trust Agreement relating to the purchase by the surviving partners of Grantor's present Fifty (50%) percent interest, or any other agreement relating to said partnership now existing between Grantor and his partners, and the Trustees shall be bound by the provisions thereof as if they were parties thereto, nor shall anything in this Trust Indenture prevent the modification or extension or cancellation of such agreement, nor shall this instrument prevent the continued payment of LACKAWANNA PANTS MFG. CO. of salaries or bonuses to Grantor or any of his partners, nor shall it prevent any increase in such salary or bonuses notwithstanding the fact that the payment of such salaries or bonuses or both shall *20 have the effect of leaving little or no income to the Trust Estate; it being the intent of the Grantor to make gifts of the said One Hundred Thousand ($100,000.00) Dollars, subject to the Thirty-two Thousand ($32,000.00) Dollars indebtedness without in any way limiting the rights and privileges of the partners of LACKAWANNA PANTS MFG. CO. to manage and operate said business as heretofore. "4. It is further expressly understood and agreed, that no beneficiary of the Trust Funds herein named, and no person who may have or claim to have any right or interest to such Trust Funds, shall have the privilege of examining the books of account of the partnership or of interfering or in any way questioning the salaries or bonuses which may be paid to Grantor and/or his present partners or the manner in which the said LACKAWANNA PANTS MFG. CO may be operated or in any way preventing the continuation of the business of the said partnership. "5. In the event that the other partners of LACKAWANNA PANTS MFG. CO. are willing to loan to the partnership any part or all of the profits distributed by the firm to such partners, then, the Trustees, may, in their sole discretion likewise loan to the partnership, *21 without notice to or consent from the beneficiaries, any part or all of the profits distributed to the Trust Estate by LACKAWANNA PANTS MFG. CO. The decision of the Trustees to make such loan shall be binding upon all beneficiaries and their judgment may not be questioned; and the Trustees may accept the note of the partnership payable to the Trustees for any monies so loaned for such period of time and/or upon such terms and conditions at such interest as they may in their sole discretion determine. Any such note or notes may likewise be renewed or extended by the Trustees from time to time in their sole discretion, it being the intent hereof that the creation of this Trust Estate shall in no way work any hardships on or retard the progress of the said LACKAWANNA PANTS MFG. CO. Any loans so made by the Trustees to the partnership shall in no way change, alter or modify the provisions pertaining to the division of profits between the partners of the said LACKAWANNA PANTS MFG. CO. in accordance with the partnership agreement, except that out of the Grantor's share, the Trustees herein shall receive such share as One Hundred Thousand ($100,000.00) Dollars bears to grantor's total investment *22 as of February 1st, 1942. Any monies paid by the partnership to the Trustees or to the Grantor, subsequent to February 2nd, 1942, whether in form of loan or withdrawal of capital, shall in no way change the share of profits to which the Grantor or Trustees are now respectively entitled. "6. It has been the practice of LACKAWANNA PANTS MFG. CO. not to divide profits among the partners, but rather to use profits as additional capital. It is the intent of all of the parties hereto that if the partners determine that in their opinion and sole discretion, one-half or more of any profits earned by the partnership should remain in the partnership as a loan or as additional capital for use in connection with the business of the firm, that the profit so loaned or so left as additional capital shall be deemed received by the Trustees and distributed to the beneficiaries but no beneficiary having or claiming to have any right or interest in the trust funds shall have the right or privilege of demanding that their respective shares of such profit or additional capital be actually paid to them prior to the date that such profit or additional capital is actually paid over by LACKAWANNA PANTS MFG. *23 CO. Profit available upon the Trust Estate's share of the partnership shall be paid to the Trustees simultaneously with the payment to the other partners of said LACKAWANNA PANTS MFG. CO. of their share of such profits. The payment of salaries or bonuses referred to in PARAGRAPH 4 shall constitute an expense of the LACKAWANNA PANTS MFG. CO. for the purpose of computing the share of the profits available to the Trustees. "7. The Trustees shall have the privilege of using a pro rata part of the corpus of each Trust Estate to pay or reduce the indebtedness of Thirty-two Thousand ($32,000.00) Dollars above mentioned. * * *
"12. The income of each Trust Estate as and when same is available pursuant to this Trust Indenture, and the corpus thereof, shall be paid and distributed by the Trustees as follows: "(a) The income from the FLORA KOPPELMAN TRUST shall be paid to FLORA KOPPELMAN, wife of Grantor. Should she predecease the Grantor, then her share of the income shall be divided equally between LEONORE BETTY and RITA KOPPELMAN, the two daughters of Grantor, the issue of each daughter always taking per stirpes the share which the mother would have taken if alive, and if either *24 LEONORE BETTY or RITA likewise predecease the Grantor, without leaving issue her surviving, or if such issue likewise predecease the Grantor, then the income of such deceased daughter shall be paid to the surviving daughter of grantor and if there be none, then to the heirs-at-law of the last survivor. If the income payable to FLORA KOPPELMAN from her Trust Estate is less than Three Hundred ($300.00) Dollars per month, the Trustees or survivor of them or successor Trustee may pay to her prior to Grantor's death, and on her request shall pay to her after Grantor's death, out of the corpus of her Trust Estate, such sum or sums which, together with the income, will yield her Three Hundred ($300.00) Dollars per month. This provision is not intended to limit or abridge the privilege and power given to the Trustees to pay to her a larger sum out of the corpus, in their discretion. "(b) The income from the RITA KOPPELMAN TRUST shall be paid to RITA KOPPELMAN, daughter of Grantor. Should she predecease the Grantor, then such income shall be paid to her issue per stirpes and if there be none or if they should predecease the Grantor, then such income shall be divided equally between FLORA *25 KOPPELMAN and LEONORE BETTY KOPPELMAN, or the survivor of them, the issue of LEONORE BETTY always taking per stirpes the share which their mother would have received if alive. If the income payable to RITA KOPPELMAN from her Trust Estate, after she is twenty-one (21) years of age, is less than One Hundred Fifty ($150.00) Dollars per month, the Trustees or survivor of them or successor Trustee may pay to her prior to Grantor's death, and on her request, shall pay to her after Grantor's death out of the corpus of her share, such sum or sums which, together with the income, will yield her One Hundred and Fifty ($150.00) Dollars per month. This provision is not intended to limit or abridge the privilege given to the Trustees to pay a larger sum in their sole discretion. "(c) The income from the LEONORE BETTY KOPPELMAN shall be paid to LEONORE BETTY KOPPELMAN, daughter of Grantor. Should she predecease the Grantor, then such income shall be paid to her issue per stirpes and if there be none or if they should predecease the Grantor, then such income shall be divided equally between FLORA KOPPELMAN and RITA KOPPELMAN, or the survivor of them, the issue of RITA always taking per stirpes *26 the share which their mother would have received, if alive. If the income payable to LEONORE BETTY KOPPELMAN from her Trust Estate after she is twenty-one (21) years of age, is less than One Hundred Fifty ($150.00) Dollars per month, the Trustees or survivor of them or successor Trustee may pay to her prior to Grantor's death, and on her request shall pay to her after Grantor's death out of the corpus of her share, such sum or sums which, together with the income will yield her One Hundred and Fifty ($150.00) Dollars per month. This provision is not intended to limit or abridge the privilege given to the Trustees to pay a larger sum in their sole discretion. * * *
"15. The corpus of each Trust Estate shall be paid and distributed by the Trustees as follows: "(a) Upon the death of FLORA KOPPELMAN, the remainder of her Trust Estate shall be divided equally between LEONORE BETTY KOPPELMAN and RITA OR THE SURVIVOR OF THEM, THE ISSUE, IF ANY, of each daughter always taking per stirpes the share which the mother would have received if alive. "(b) The trustees shall pay to RITA at her own request at the time of the death of the Grantor, if she shall then be not less than twenty-five *27 (25) years of age nor more than thirty (30) years of age, or when she reaches her twenty-fifth (25th) birthday a sum equal to twenty (20%) percent of her Trust Estate then remaining; twenty-five (25%) percent if she then be between thirty (30) and thirty-five (35) years of age or when she reaches her thirtieth (30th) birthday; thirty-three and one-third (33 1/3%) percent, if she then be thirty-five (35) years of age or over, and the balance of her corpus of her Trust Estate in equal annual installments during the next succeeding fifteen (15) years, but in no event shall each annual installment be less than Two Thousand ($2,000.00) Dollars, regardless of the fact that such payment will exhaust her Trust Estate in less than fifteen (15) years. "(c) The Trustees shall pay to LEONORE BETTY at her request at the time of the death of the Grantor, if she shall then be not less than twenty-five (25) years of age nor more than thirty (30) years of age, or when she reaches her twenty-fifth (25th) birthday a sum equal to twenty (20%) percent of her Trust Estate then remaining; twenty-five (25%) percent if she then be between thirty (30) and thirty-five (35) years of age or when she reaches *28 her thirtieth (30th) birthday; thirty-three and one-third (33 1/3%) percent if she then be thirty-five (35) years of age or over, and the balance of her corpus of her Trust Estate in equal annual installments during the next succeeding fifteen (15) years, but in no event shall each annual installment be less than Two Thousand ($2,000.00) Dollars, regardless of the fact that such payments will exhaust her Trust Estate in less than fifteen (15) years. "(d) Should RITA or LEONORE BETTY predecease Grantor then the corpus of the Trust Estate of any deceased child shall be paid per stirpes to her issue as they respectively reach the age of twenty-one (21), unless by the laws of State of Pennsylvania same must be sooner paid, with permission to the Trustees to make advances to such issue or any of them before they reach the age of twenty-one (21) by payment to the father or guardian if such Trustees deem such advances advisable. * * *
"17. The parties hereto expressly state that the intent of this indenture is to create irrevocable Trusts and that no part of the income or principal is to be used by THEODORE KOPPELMAN, the Grantor, for his own benefit and that no part of the principal *29 of the Trust Funds shall revert to said Grantor. No portion of this agreement shall be interpreted contrary to this intention. "18. In the discretion of the Trustees, the income payable to any infant beneficiary may be accumulated by the Trustees, and paid over to each such beneficiary on reaching the age of twenty-one (21). Should the Trustees in their absolute discretion determine that such beneficiary requires such income for purposes other than ordinary maintenance, support and education (which Grantor will continue to furnish for RITA and LEONORE BETTY out of his own funds) they may use any part or all of such income for such purpose." On or about February 2, 1942, Samuel Dickstein and Harry Dickstein created similar trusts in favor of their own immediate families. Petitioner and his wife understood at the time of the trust indenture that no part of the capital investment in the business standing in the name of petitioner or the trusts was to be withdrawn from the business. In December 1942 Joseph M. Harris, Harry Dickstein and Samuel Dickstein executed a consent agreement stating: "The parties hereto having consented that THEODORE KOPPELMAN create a Trust Indenture *30 involving and covering a portion of his interest in the LACKAWANNA PANTS MFG. CO. and having read the Trust Indenture intended to be signed by the said THEODORE KOPPELMAN, hereby consent to the transfer of a portion of THEODORE KOPPELMAN's partnership interest as set forth in said Trust Indenture. "This consent is given upon the express understanding that all existing agreements between HARRY DICKSTEIN, SAMUEL DICKSTEIN, JOSEPH HARRIS and THEODORE KOPPELMAN as well as the Life Insurance Trust Agreement relating to the purchase by HARRY DICKSTEIN, SAMUEL DICKSTEIN and JOSEPH HARRIS of the fifty (50%) percent interest of THEODORE KOPPELMAN in LACKAWANNA PANTS MFG. CO. shall remain in full force and effect notwithstanding the creation of the said Trust Indenture." At the same time petitioner and the other partners executed similar consents to the trusts created by the Dicksteins. On March 20, 1943, petitioner and the other persons concerned executed an agreement which provided, in pertinent part: "AGREEMENT made and entered into this 20th day of March, 1943, between THEODORE KOPPELMAN, individually, and THEODORE KOPPELMAN and FLORA KOPPELMAN, as Trustees for Flora, Leonora Betty *31 and Rita Koppelman, Parties of the First Part, and SAMUEL DICKSTEIN, individually, and SAMUEL DICKSTEIN and HOWARD L. DICKSTEIN, as Trustees for Howard L., George and Stanley N. Dickstein, HARRY DICKSTEIN, individually, and HARRY DICKSTEIN and EVA DICKSTEIN, as Trustees for Eva, Herbert L., Shirley E. Dickstein and Miriam Raker, and JOSEPH M. HARRIS, individually, Parties of the Second Part, all of the City of Scranton, State of Pennsylvania, "WITNESSETH: "WHEREAS, the individual parties hereto did theretofore enter into a partnership agreement and have since been engaged in the manufacturing business at the City of Scranton, State of Pennsylvania, under the firm name and style of LACKAWANNA PANTS MANUFACTURING COMPANY, and "WHEREAS, THEODORE KOPPELMAN, SAMUEL DICKSTEIN and HARRY DICKSTEIN, by mutual consent of all the individual parties hereto, have heretofore created certain trust esstates, the corpus of which estates consist of portions of their respective shares and interest in the said partnership, and "WHEREAS, the parties of the first part own collectively a 50% interest in the said LACKAWANNA PANTS MANUFACTURING COMPANY and the parties of the second part own collectively *32 the remaining 50% of said partnership, and "WHEREAS, the parties hereto desire to set forth in writing the terms under which said partnership shall operate and continue, "NOW, THEREFORE, in consideration of the mutual agreements hereinafter set forth and of the sum of One Dollar ($1.00) by each of the parties hereto to the other in hand paid, the receipt whereof is hereby acknowledged, the parties hereto agree as follows: "1. The said parties have agreed, and by these presents do agree with one another, to continue as partners in the business of pants manufacturing and/or the manufacturing of such other items as they may hereafter agree upon. Said partnership shall continue from year to year dating from the 1st day of February, unless the parties of the first part jointly but not severally, on or before the 1st day of October in any year, serve the notice provided for in the clauses herein numbered 9th and 10th, and thereupon, after the service of such notice, the partnership shall be terminated and dissolved as of the 31st day of January next following the service of said notice, unless Theodore Koppelman agrees to purchase the 50% interest of the partnership collectively owned *33 by the parties of the second part (if notice as mentioned above is given by the parties of the second part to him) or unless Harry Dickstein, Samuel Dickstein or Joseph M. Harris, three of the parties of the second part, purchase the 50% interest of the partnership collectively owned by the parties of the first part (if notice as mentioned above is given by the parties of the first part to the parties of the second part). The purchase price shall be on the basis set forth in paragraphs 9th and 10th herein. It is understood, however, that none of the parties hereof shall have the privilege of selling or disposing of their respective shares of said partnership to any person, firm or corporation, unless such share in the partnership is first offered to the other parties hereto, pursuant to the provisions of this agreement. "2. The name and style of said partnership shall continue to be LACKAWANNA PANTS MANUFACTURING COMPANY. "3. The capital of this firm as of January 31, 1943 is $553,223.35 which capital is credited on the books of the partnership to each of the parties hereto, as set forth in Schedule A annexed hereto and made part hereof. "4. The capital of the co-partnership *34 herein shall be used and employed for the support, maintenance and management of its business. "5. At all times during the continuance of the said co-partnership business, said Theodore Koppelman shall and will give his time and attention to said business and manage the same as he has done heretofore. It is agreed, however, that he may have investments in, or be interested in, other non-competitive business during the existence of this co-partnership, provided it will not interfere with the business of the co-partnership. Samuel Dickstein, Harry Dickstein and Joseph M. Harris are not required to devote any time to the partnership business; it is understood that they are now interested in the business of Anthracite Pants Manufacturing Company, a competitive business. "6. * * * "(b) Nothing herein contained is intended to give the trustees who are parties hereto or the persons for whose benefits the trusts are set up, any right or privilege in any way to interfere with the management of the partnership. Such management in all respects is intended to be invested exclusively in the hands of the individual parties hereto. "(c) For the purpose of determining what profit or losses *35 the partnership earned or suffered, the moneys paid to Theodore Koppelman as salary and his traveling expenses shall be deemed an expense of the partnership as if he were not a partner. Theodore Koppelman shall continue to receive the same salary and his traveling expense account in accordance with arrangements which existed up to the present time. Such arrangement as to salary and expenses may not be changed except upon the unanimous consent of all the individual parties hereto. * * *
"(e) All partnership moneys received from any and all sources shall be deposited by the said Koppelman in the name of the partnership in a bank or banking institution designated by the parties hereto. All checks, notes and other instruments for the payment of money shall be valid if made or otherwise issued in the name of said co-partnership and signed by Koppelman and countersigned by either Samuel Dickstein, Harry Dickstein or Joseph M. Harris. No checks, notes and/or other negotiable papers shall be valid unless so signed and countersigned. * * *
"9. In the event of the death of Theodore Koppelman the partnership shall continue until thirty (30) days after the appointment of an executor *36 or administrator for his estate. If, prior to the expiration of such thirty (30) days, any of the parties of the second part shall agree in writing to purchase the entire 50% interest in the partnership owned by the parties of the first part, at the book value thereof as of the last day of the month preceding the date of death, the said business may be continued in operation. Should none of the parties of the second part agree in writing so to purchase such entire 50% interest, then this partnership shall forthwith be liquidated and dissolved. It is the intent that each of the parties of the second part shall have the privilege of purchasing such portion of the interest of the parties of the first part (in the event of Koppelman's death) which will maintain the same ratio of ownership as now exists between the parties of the second part. "Should any one or more of the parties of the second part elect not to purchase his pro rata share, the remaining parties of the second part may purchase the same. "The parties of the first part bind themselves, their heirs, executors, administrators, assigns and successor trustees to sell such 50% interest to the persons and in the manner above *37 set forth in the event only of the death of Theodore Koppleman. Nothing in this agreement is intended to give the parties of the second part or any of them the privilege of purchasing a portion of the 50% interest owned by the parties of the first part (in the event of Koppelman's death) and they shall have the option of purchasing all or none of it. "Should any one individual party of the second part die, the partnership, nevertheless, shall continue. The interest of such deceased partner in the partnership, together with the interest in the partnership which may have been created by him shall be offered first to the remaining individual parties of the party of the second part. Upon refusal to purchase the same at book value thereof as of the last day of the month preceding the date of death, within sixty (60) days after the appointment of an executor or administrator of the estate of such deceased party, then such share may be purchased by Theodore Koppelman individually, and upon his refusal in writing so to purchase within sixty (60) days after same is offered to him in writing, such share may be sold to any person not a party to this agreement. "In the event only of the death *38 of any one individual party of the parties of the second part, the parties of the second part hereby bind themselves, their heirs, executors, administrators, assigns and successor trustees to sell such interest. Nothing in this agreement is intended to give the individual survivors the privilege of purchasing a portion of the interest in the partnership available by reason of death as above set forth, and the individual survivors shall have the option of purchasing all or none of it. * * *
"11. This partnership agreement may be terminated on January 31 of any year by notice in writing given on or before the preceding October 1st by the parties of the first part to the parties of the second part or by the parties of the second part to the parties of the first part. Thereupon, unless the party receiving such notice within thirty (30) days from the receipt thereof agrees to purchase at book value the entire share constituting the 50% interest in the partnership of the party giving the notice, this partnership shall terminate on January 31st following the receipt of such notice. The book value shall be computed as of the last day of the month preceding the month that the agreement *39 to purchase is signed. As between the parties constituting the parties of the second part hereto, if any one or more of them desire to withdraw from the partnership herein, the partnership, nevertheless, shall continue, but the remaining individual parties constituting the parties of the second part shall have the first option to purchase the share of the one desiring to withdraw, within sixty (60) days after receiving written notice thereof. Should none of the parties constituting the parties of the second part purchase such share, the same may be purchased by Theodore Koppelman individually within sixty (60) days after written notice that such share is available to him. The book value shall be computed as of the last day of the month preceding the month that the agreement to purchase is signed. Should Theodore Koppelman likewise fail to purchase the share so offered for sale, then such share may be sold to any outside party. * * *
"19. Nothing in this agreement contained is intended in any way to change or modify the provisions of the respective trusts heretofore created by three of the individual parties hereto. Should any provision of this agreement be capable of interpretation *40 which would seem to change or modify the trust agreements in whole or in part, the provisions of the trust agreements shall control." After February 2, 1942, and after March 20, 1943, there was no change in the operation, management or policies of the Lackawanna Pants Manufacturing Company. Petitioner continued to be manager of the business. As of February 1, 1946, the partnership assets were transferred to a corporation of the same name and petitioner and his wife acquired the stock issued to Harry Dickstein, Samuel Dickstein and Joseph M. Harris. At about the same time petitioner and his wife resigned as trustees of the trusts created by petitioner and another individual became trustee by appointment of the Court of Common Pleas of Lackawanna County. The net income of Lackawanna Pants Manufacturing Company and petitioner's salary for the fiscal years ending January 31, 1939 to 1946 were: Fiscal Year
Petitioner's
ending in
Net Income
Salary
1939
$ 12,470.95
1940
35,426.30
$5,650
1941
36,411.39
5,450
1942
75,859.48
5,100
1943
242,487.69
5,300
1944
380,815.38
5,200
1945
474,870.52
7,600
1946
421,807.97
7,800
The partnership filed *41 informational returns for the fiscal years ending January 31, in 1944, 1945 and 1946, reporting distributive shares of petitioner and his trusts as follows: 1944
1945
1946
Theodore Koppelman
$96,635.11
$126,171.86
$118,832.62
Flora Koppelman Trust
40,335.87
48,739.93
45,712.91
Rita Koppelman Trust
40,335.87
48,739.92
45,712.91
Leonore B. Koppelman Trust
40,335.86
48,739.91
45,712.91
Distributions by the partnership to petitioner and his trusts, exclusive of salary, were: 1944
1945
1946
Theodore Koppelman
$35,067.34
$42,717.59
$38,367.24
Flora Koppelman Trust
13,809.73
58,577.15
9,389.23
Rita Koppelman Trust
13,809.73
58,577.15
9,389.23
Leonore Betty Koppelman Trust
13,809.93
58,577.15
9,389.23
Distributions by check from trusts to beneficiaries were: 1944
1945
1946
Flora Koppelman
$14,152.90
$41,964.31
$13,857.69
Rita Koppelman
12,314.47
39,667.07
10,670.19
Leonore Betty Koppelman
12,371.42
39,667.07
10,670.19
Petitioner supported his wife and daughters during the taxable years out of his own earnings from the partnership business without using for such purpose *42 the profits distributed to the trusts. The agreement of March 20, 1943, in which the trustees of the trust or trusts created by petitioner were named as a partner was not made in good faith and with a business purpose with intent to carry on an enterprise in partnership with the trust or trusts. Opinion The respondent determined the deficiencies on the ground that petitioner was taxable on 50 per cent of the distributive partnership income, holding that the trust created by the indenture of February 2, 1942, was not a bona fide partner in the taxable years in the business conducted under the name of Lackawanna Pants Manufacturing Company. Petitioner contends that the trust indenture constituted an absolute and irrevocable conveyance of a part of his interest in the partnership and that its provisions preclude taxation of the income from that trust corpus to petitioner. He contends, further, that the partnership agreement of March 20, 1943, was entered into in good faith and is not a sham designed for the purpose of evading taxes. In Commissioner v. Culbertson, 337 U.S. 733 (1949) the Supreme Court explained the test of determining whether a purported partnership *43 is a valid basis for taxation of the distributive shares to the named partners. That test is grounded upon intent, - "whether the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise". This is to be ascertained from consideration of all the surrounding circumstances which tend to show the true intent. Where family relationships and gifts of interests are involved, the problem, as the Supreme Court observed, is to discern whether the true intent of a taxpayer is to join together with others with a business purpose in conducting the enterprise or to attempt "to shift tax incidence by surface changes of ownership without disturbing in the least his dominion and control over the subject of the gift or the purposes for which the income from the property is used". It is clear that an investment in a business may be subject of a gift and that the donee may, by agreement with other parties in interest, become a partner sharing in profits. Also, partners may by agreement designate one of their number as managing partner, agreeing to abide by his decisions, and we have held that the scope of the term "partnership" as used *44 in the Internal Revenue Code, may embrace a venture in which a trust is one of the "partners". Theodore D. Stern, 15 T.C. 521 (1950). The circumstances related by petitioner and his witnesses as giving rise to the trust are to the effect that because his wife, Flora, was insisting that he make some provision for her future security and that of their two daughters, petitioner, in January 1942, consulted an attorney in New York, who visited petitioner and his wife in Scranton and discussed the matter of providing the desired security. The attorney advised that a trust could be established. Petitioner's assets were almost entirely invested in the business. and his partners would not consent to the withdrawal of any capital. For many years they had consistently plowed back into the business all profits over the amount needed for living expenses. The only property available for a trust corpus was a portion of petitioner's capital interest in the business. The transfer of any part of his interest, being contrary to the partnership agreement of 1927, required the assent of petitioner's partners. This was given only upon the condition that the capital given to the trust be *45 not subject to withdrawal and that the trustees and beneficiaries have no power to effect a change in the former methods of doing business. The attorney who drew the trust indenture testified that the partners desired to leave as much of the profits in the business as was possible and were afraid that if a trust had an interest, they would have to distribute profits. Accordingly, they insisted that the trustees would have to conform to the decisions of the individual partners. After considering the trust idea, two of the partners, the Dicksteins, had similar trust agreements prepared for the benefit of their families. Petitioner considered and rejected the idea of appointing a corporate trustee or an individual outside the business for fear such a trustee might interfere in the business and demand more conservative methods of operation. At the attorney's suggestion he named himself and his wife as trustees. Petitioner's wife and two daughters were named as beneficiaries, having equal shares. Petitioner emphasizes that no change in operations occurred and that he continued as managing partner without interference by the trustees or beneficiaries of his own trust or the similar trusts *46 created by the Dicksteins, and that the former policy of retaining profits in the business was continued. The trust indenture of February 2, 1942, accordingly provided that nothing therein was intended to modify or change or limit any of the provisions of the partnership agreement or any other agreement then existing between petitioner and his partners or to limit the rights of the partners to operate the business as theretofore, that no beneficiary or other person claiming an interest in the trust funds should have the privilege of examining the partnership books or questioning the manner of operation of the partnership, and that if the partners should determine to retain profits as additional capital, no beneficiary should have the right to demand payment of her respective share. It is evident from these provisions that the trustees, as such, had no actual control of the corpus at any time, and no control of the income until petitioner and his partners decided that some amount of profits should be distributed, and that the trustees, as such, had no vote or voice in that decision. The consent agreements executed in December 1942 contained the express condition that all existing *47 agreements between the individual partners remain in full force and effect, including the life insurance agreement relating to the purchase by the Dicksteins and Harris "of the fifty (50%) percent interest of Theodore Koppelman". The fact that the trust was declared to be irrevocable is not controlling, nor is it important to determine whether the indenture effected an absolute transfer of legal title. In the first place, the restrictions against withdrawal of the corpus from the business managed by petitioner left that corpus unavailable for trust use except upon consent of the individual partners, and their declared intent was to retain it in the business. The individual partners retained the practical dominion and control over it. Had a series of business loss years ensued, that corpus might have been subject to partial or even complete evaporation, and thus could be lost to the trust, regardless of objections by the trustees. In the second place, the technical completeness of the gift is not a bar to taxing the income to the donor. Commissioner v. Tower, 327 U.S. 280; Commissioner v. Culbertson, supra. Petitioner's second principal contention is *48 that the partnership agreement of March 20, 1943, was entered into in good faith and with a business purpose and was not a device for tax avoidance. Tested by the criteria referred to in Culbertson v. Commissioner, supra, we do not find the requisite intent in good faith to carry on the enterprise in partnership, in so far as the trusts are concerned. The trust contributed to the business no capital not already invested, could perform no services, vital or otherwise, and could not participate in the management of the business. Petitioner, as co-trustee, contributed nothing to the business that he did not contribute as a partner in his own right. Feldman v. Commissioner, 186 Fed. (2d) 87 (1950 CA-4), affirming 14 T.C. 17. Similarly, Flora Koppelman, as co-trustee, contributed no services distinguishable from the services she had performed before, and continued to perform, as production manager. Participation in management is a factor of importance in evaluating the reality of the arrangement, although, as in limited partnerships, it is not an essential. Here the agreement prohibits any participation by the trustees or the beneficiaries in management. Even *49 though petitioner was manager, the other individual partners had some part in performing vital services. For example, checks were to be signed by petitioner and countersigned by one of the other individual partners. Also, decisions as to distributions of profits would require concurrence of those partners. The effect of the several restrictions placed upon the trust in the purported partnership agreement left it with merely the right to be credited with a portion of the earnings. The status of the individual partners as policy makers and petitioner as manager were carefully preserved. The provisions for rights of the survivors in case of the death of petitioner or one of the other individual partners effectively deny the petitioner's trust any continuing rights in case of his death. The interest of the trust is treated as it would be if the entire 50 per cent interest were still vested in petitioner. The terms of the agreement gave the trusts none of the fundamental rights of partners and the statements of the parties, and their conduct as well, bear out that this was the result of their careful contrivance. One of the criteria by which the bona fides of a family partnership arrangement *50 is to be ascertained is the actual control of a share of the income and the purposes for which the income is used. "It is the command of the taxpayer over the income which is the concern of the tax laws". Harrison v. Schaffner, 312 U.S. 579; Commissioner v. Tower, supra. The individual partners retained control of the income and determined whether any profits should be distributed. Petitioner says that he supported his wife and daughters out of the income he received, without using any trust income for this purpose. Flora used some of her trust income to buy jewelry, not understanding that petitioner was still required to support her out of his own funds, but made no further expenditures of trust funds when warned that this might be considered as support. Considerable amounts were distributed by the trustees to the beneficiaries, but we are not informed of the use made of these funds. It happened that the increasing profits of the business made petitioner's immediate share adequate to meet his family obligations without usage of the trust funds. Had the income been inadequate, however, there is no provision in the trust indenture which would prevent use of *51 funds allotted to the trust for support purposes. As was said in Helvering v. Clifford, 309 U.S. 331, 336, "* * * where the head of the household has income in excess of normal needs, it may well make but little difference to him (except income-tax-wise) where portions of that income are routed - so long as it stays in the family group". Also, the interest transferred by the indenture was subject to an indebtedness of $32,000, which was to be paid by the trustees from profits distributed to the trust. Petitioner thus saddled the first moneys to become available to the trust with the obligation of paying off a debt of his own. Petitioner denies that the motive for creating the trust was tax avoidance, asserting that its primary purpose was to provide security for his family and that the potential tax savings appeared to be of no large consequence and were only an incidental factor. The effort to provide security, in so far as security could be provided in this fashion, was fully carried out with the creation of the trust, coupled with the consent of petitioner's partners to the conveyance of a part of his interest. This served as an assignment of part of petitioner's *52 share of the capital and earnings of the business. This would not have been questioned as its effect taxwise would be to assign the income after it came into petitioner's hands and was taxable to him. Lucas v. Earl, 281 U.S. 111. The subsequent formal partnership agreement of March 20, 1943, naming the trust as a "partner" was quite unnecessary for the avowed purpose of providing security. Since the trust, the beneficiaries, and the trustees, as trustees, were to have none of the fundamental rights of partners in the business; and since the capital was not subject to withdrawal, and the income was not available to the trustees until the individual partners distributed it, there was no business purpose served by the partnership agreement naming the trusts as partners. The intent to furnish members of petitioner's family with independent income was a personal purpose of petitioner; not a business purpose of the Lackawanna Pants Manufacturing Company. The only apparent purpose was that of attempting to avoid taxes through dividing the earnings into multiple units "by the simple expedient of drawing up papers". Commissioner v. Tower, supra. Furthermore, we *53 are not persuaded that tax reduction was not more than an incidental purpose for the arrangement. The partnership's accountant testified that at the time the trust was created he computed the tax savings which would have resulted had the trust been in effect in earlier years and the trust income taxed to three separate trusts and not to petitioner. The tax saving to petitioner and his family, it was estimated, would have been $196.49 for 1939; $1,491.76 for 1940; and $2,560 for 1941. The figures were based on the business income for the partnership's fiscal years ending in these calendar years. On February 2, 1942, when the trust indenture was signed, petitioner did not have the figures on the business profits for the fiscal year ended January 31, 1942, but must have known then that the profits were greater than in the preceding year. They were actually more than doubled. The partnership agreement came over a year later when another year's increasing profits (more than three times those of the preceding year) and higher tax rates would add to the incentive for reducing taxes. The possible tax savings to the family for the taxable years before us were substantial. Petitioner cites *54 and relies upon Ardolina v. Commissioner, 186 Fed. (2d) 176 (CA-3, 1951), reversing Tax Court Memorandum Opinion [8 TCM 1111,]. That case is not controlling here. Ardolina had been in partnership under a written agreement with another individual, Dietz, who had died. The taxpayer had operated the business for some years, paying a share of the profits to Dietz' Estate as co-owner or "partner". Later he bought out the Estate and formed a partnership with his wife who gave her note for the price of the half interest. Ardolina gave her the money to pay the note, thus in effect giving her the interest. He was designated as manager in a written agreement similar to his agreement with Dietz. The Court of Appeals for the Third Circuit concluded that this partnership was valid for tax purposes, pointing out that the taxpayer's wife may be presumed a more able partner than the Dietz Estate and that she received and disposed of her distributive share of profits without restriction. If the requisite intent to carry on business as partners was there present it does not follow that a similar intent existed under the very different facts of the present case. The case *55 of Theodore D. Stern, supra, involved trusts which were named as partners in a partnership agreement. In that case, the taxpayer created trusts for the benefit of members of his family and transferred shares of stock in a corporation of which he was controlling stockholder to the trusts, of which he was trustee. The corporation was then liquidated and a limited partnership formed under the laws of Illinois with the trusts and four individuals, former stockholders, as limited partners and the taxpayer as general partner. We held that the gifts of shares of stock to the trusts were complete, that the trusts must be recognized as members of the limited partnership and that their shares of partnership income were not taxable to the donor. The trusts actually contributed to the partnership capital which they had received on liquidation of the corporation and it was there found that a substantial economic change took place in which the taxpayer gave up and the beneficiaries indirectly acquired, an interest in the business. The beneficiaries in that case had also performed some services and might have been admitted as partners had the taxpayer chosen to do so. Thus we concluded *56 that a genuine intent to carry on business as partners existed. We cannot reach a similar conclusion on the facts before us. Flora could not have been admitted as a partner without the consent of petitioner's partners and they had refused it; and petitioner's daughters performed no services of any consequence. We conclude that the individual partners intended to do business as partners with each other, but that there was no intention in good faith and with a business purpose to carry on business in partnership with the trusts or trustees. This result is in conformity with the cases of Russell Giffen, 14 T.C. 1272 (1950); Stanback et al. v. Robertson, 183 Fed. (2d) 889 (CA-4, 1950) and Feldman v. Commissioner, supra.
Decision will be entered for the respondent.